A00A0697. SANDERS v. THE STATE.
(530 SE2d 203)

McMURRAY, Presiding Judge.

Tommy Lee Sanders was indicted for armed robbery (Count 1), possession of a firearm during the commission of a crime (Counts 2 and 4), and aggravated assault (Count 3). Evidence adduced at trial reveals that shortly after midnight on July 17, 1994, the defendant entered Piggly Wiggly in Moultrie. He walked by the victim, an employee, turned and greeted her, and continued to walk toward the front of the store. The victim followed him, and the defendant started running.

The store's assistant stock manager had also spotted Sanders. The employees blocked him between two cash registers. The victim testified that the defendant then "started fumbling around and dropping cartons of cigarettes and he reached into his pants and pulled out a gun." She testified that Sanders threatened to kill her, dropped some of the cigarettes, and ran out of the store.

The assistant stock·manager and a cashier also testified that the defendant pointed a gun at the victim and threatened to kill her. The cashier said the defendant fled the store carrying cigarettes and she called the police.

Officer Michael A. Snyder, Jr. arrived within five minutes but

was unable to locate Sanders. The officer was familiar with Sanders and his vehicle, however, and spotted him putting gas in the car at approximately 4:30 a.m. Sanders fled on foot as the officer was driving toward him.

Based on this evidence, a jury convicted the defendant on all counts. The trial court ruled that the aggravated assault merged with the armed robbery and that the firearms charges merged. In view of the defendant's prior convictions, the trial court sentenced him to life imprisonment for the armed robbery and five years for the firearms charge, to be served consecutively. Sanders' motion for new trial was denied, and he appeals. We affirm. *Held*:

1. After behaving disruptively, Sanders was removed from the courtroom. He assigns three errors to his ejection: (a) the trial court violated his constitutional rights to confront witnesses against him and testify on his own behalf; (b) the trial court failed to mitigate the effects of his absence; and (c) the trial court should have returned him to the courtroom for an in-court identification. We will address these arguments seriatim.

(a) The trial court did not abuse its discretion in removing Sanders from the courtroom.

> "(A) defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. . . . (T)here are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant . . . : (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly." *Illinois v. Allen*, 397 U. S. 337, 343-44 (90 SC 1057, 25 LE2d 353) (1970).

*Williams v. State*, 183 Ga. App. 373, 375 (2) (358 SE2d 914).

After the first panel of jurors was called, the defendant stated to the court that his appointed counsel was not prepared for trial. Upon inquiry by the court, counsel indicated that he had interviewed witnesses, conferred with the defendant, and independently investigated the facts of the case. The trial court deemed the defendant's statement a motion for continuance and denied it.

After swearing in the fourth panel of jurors, the defendant asked to make another statement. The judge asked the defendant to wait until jury selection was completed. The defendant refused, continually interrupting the proceedings to state that he would not proceed

with his appointed counsel. The judge warned the defendant that if he could not behave, he would be removed from the courtroom. The defendant continued to argue with the judge, who finally ordered him taken to a holding cell adjacent to the courtroom. Voir dire was conducted, and the court advised the panels as follows:

> THE COURT: . . . Ladies and gentlemen, the removal of the defendant from this courtroom this morning has no bearing whatsoever on the defendant's guilt or innocence in this case. And it must not be considered by you in any manner during your deliberations in reaching a verdict. You are to disabuse your minds entirely of such and give it no consideration whatsoever in reaching your verdict. It simply has no bearing on whether or not he is guilty or not guilty of the charges for which he is accused. . . .

After the jury was impaneled and pretrial matters disposed of, the judge ordered the defendant returned to the courtroom to give him another opportunity to rejoin the trial.

> THE COURT: . . . Mr. Sanders, you have a right to be here in this courtroom during your trial so long as you behave yourself and do not interrupt the proceedings. I tried to tell you that a few minutes ago and you just kept right on interrupting and being disruptive. I'm telling you again. I would like to see you stay here in the courtroom for your trial, but that's up to you. Now, if you can behave yourself and not interrupt the proceedings and not be disruptive to the proceedings you are welcome to be here. I would like for you to be here. But, if you cannot do that, then we're going to proceed with your trial while you are not in the courtroom. . . . Now, do you think you can behave yourself and not interrupt the proceedings?

> DEFENDANT SANDERS: Well, can I say this Judge Horkan? I —

> THE COURT: Do you think you can behave yourself and not interrupt the proceedings?

> DEFENDANT SANDERS: I don't think so up under these circumstances, Your Honor, because I would like to — I would like to get me another lawyer if I have to pay for it myself.

> THE COURT: I've heard you on that and I've overruled it. Sufficient grounds have not been shown for that. Now,

you're telling me you cannot behave yourself and not interrupt the proceedings? Is that what you're telling me?

DEFENDANT SANDERS: Yes, sir.

The judge then informed the defendant that if he changed his mind and decided to behave, he would be permitted to return to the courtroom. The defendant was again taken from the courtroom. He never asked to return. The record reflects that counsel met with the defendant during trial and explained to him the disadvantages of refusing to appear, but the defendant still declined to attend.

The judge gave the defendant every possible opportunity to remain in the courtroom. On each occasion the defendant continued to argue with the judge and stated specifically that he would not remain quiet. Accordingly, the trial court did not err in removing the defendant from the courtroom. See *Smith v. State,* 161 Ga. App. 512 (288 SE2d 754).

(b) The trial court's admonition to the jury pool to disregard the defendant's removal from the courtroom, which was repeated during the charge to the jury, sufficiently mitigated the effect of his absence on the jury. *Williams v. State,* 183 Ga. App. at 373, supra. The defendant erroneously relies on *United States v. Ives,* 504 F2d 935 (9th Cir. 1974), in support of his argument that the trial court should have ordered breaks in the trial for the purpose of keeping Sanders apprised of its progress. *Ives* is not binding on this Court and is inapposite. First, as noted earlier, counsel did meet with the defendant during trial. Moreover, knowing that the defendant was dissatisfied with him, counsel enlisted the assistance of another defense attorney to speak with his client, but to no avail. The defendant would not return to the courtroom and never asserted his right to testify. Unlike the case sub judice, in *Ives,* the defendant, a paranoid schizophrenic, insisted that he be allowed to return to the courtroom to testify in his own behalf. The judge refused after Ives attacked the United States attorneys.

Finally, we note that Sanders failed to object in the trial court that additional measures were required to mitigate his absence. Thus, the defendant has waived the right to complain on appeal. *Newton v. State,* 226 Ga. App. 501, 502 (1) (486 SE2d 715); *Walker v. State,* 216 Ga. App. 236 (454 SE2d 156).

(c) The trial court did not abuse its discretion by failing to insist that Sanders be returned to the courtroom for the purpose of identification by the State's witnesses. As the defendant stated his intention to continually interrupt the trial and refused to return despite counsel's entreaty, the judge would have been obliged to bind and gag him in order for the witnesses to make an in-court identification. This likely would have had a significant prejudicial impact upon the jury.

*Illinois v. Allen*, 397 U. S. at 344, supra. Therefore, under the circumstances of this case, the absence of a face-to-face, in-court identification does not warrant reversal of the defendant's conviction.

2. Sanders' contention that the State failed to prove identity beyond a reasonable doubt is meritless. Both the victim and the cashier testified that the man they saw in the courtroom prior to trial was the same man who brandished a pistol in the store on the night in question. The victim testified that she was "absolutely sure" the robber was the defendant because she was acquainted with him prior to the incident. The assistant stock manager also testified that he saw the defendant in court shortly before trial and had no trouble recognizing him as the robber.

We are mindful that the incident report Officer Snyder completed after the robbery indicated that the defendant was six feet tall and weighed 160 pounds. After viewing him in the courtroom, the officer admitted that the defendant was at least seven inches shorter. However, the officer also testified that none of the witnesses to this incident had given him that description; rather, he copied it from a previous incident report.

It was for the jury to determine the weight of the evidence and the credibility of the State's witnesses. *Nealy v. State*, 239 Ga. App. 651, 656 (9) (522 SE2d 34). On appeal from a conviction, this Court must view the evidence in the light most favorable to the verdict. *Parker v. State*, 220 Ga. App. 303 (1) (469 SE2d 410). Under these standards, the evidence was sufficient to authorize a rational trier of fact to find the defendant guilty beyond a reasonable doubt of armed robbery and possession of a firearm during the commission of a crime. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

3. Nor do we agree with Sanders' contention that the State failed to prove a taking occurred within the meaning of OCGA § 16-8-41. The statute provides that armed robbery is committed when a person, with intent to commit a theft, takes another's property from the person or immediate presence of another by use of an offensive weapon. Here, the victim testified that when Sanders pointed the gun at her, she froze and Sanders ran out of the store dropping cigarettes he had taken. Although the evidence does not show Sanders escaped with any cigarettes, the statute does not require that the property taken be permanently appropriated.

"Under OCGA § 16-8-41 the slightest change of location whereby the complete dominion of the property is transferred from the true owner to the trespasser is sufficient asportation to meet the statutory criterion. (Cits.) It is not required that the property taken be permanently appropriated. (Cits.)"

(Punctuation omitted.) *Peoples v. State*, 184 Ga. App. 439 (361 SE2d 848) (1987).

*Miller v. State*, 223 Ga. App. 453, 454 (1) (477 SE2d 878).

The evidence of asportation amply supported the conviction under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307, supra.

4. Finally, Sanders enumerates as error the trial court's denial of his motion for new trial based on ineffective assistance of counsel. To prove that trial counsel was so ineffective as to deny him a fair trial under the Sixth and Fourteenth Amendments, the defendant must show

> (1) his attorney's representation in specified instances fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous. (Citation and punctuation omitted.) *Ivory v. State*, 234 Ga. App. 858, 861 (4) (508 SE2d 421).

(Punctuation omitted.) *Lowe v. State*, 241 Ga. App. 335 (1) (526 SE2d 634).

Sanders' primary contention in this regard is that trial counsel did not call as witnesses Sanders' mother and a female friend,[1] who would have testified that the friend accompanied him to put gas in his mother's car around 11:15 p.m. on the night of the incident, instead of at 4:30 a.m., as Officer Snyder reported.

During the hearing on Sanders' motion for new trial, trial counsel testified that when he interviewed Sanders, the defendant "did not dispute" that Officer Snyder "saw him at 4:00 in the morning." Counsel therefore made a tactical decision not to call these alibi witnesses.

The defendant also alleges that trial counsel was ineffective for failing to explain to the jury the reason that he fled from Officer Snyder. Such an explanation would have included the prejudicial statement that Sanders had missed a court date on a separate charge. "Deciding what evidence should be presented 'is a matter of trial strategy and tactics, and tactical errors do not constitute ineffective assistance of counsel. [Cit.]' *Bradford v. State*, 221 Ga. App. 232, 235

---

[1] Sanders' friend was incarcerated at the time of the hearing on Sanders' motion for new trial.

(3) (a) (471 SE2d 248) (1996)." *Sewell v. State*, 229 Ga. App. 685, 688-689 (1) (c) (494 SE2d 512).

The record discloses that trial counsel was prepared and vigorously cross-examined all prosecution witnesses, particularly on the crucial identification issue. Thus, the trial court's determination that counsel provided effective representation is not clearly erroneous.

*Judgment affirmed. Johnson, C. J., and Phipps, J., concur.*

DECIDED FEBRUARY 22, 2000.

*Moore, Tyndall & Castellow, David R. Tyndall*, for appellant.

*J. David Miller, District Attorney, A. Scott Gunn, Wesley J. Lewis, Andrew W. Pope, Assistant District Attorneys*, for appellee.